## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATHALIE VALIQUETTE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VICOR CORPORATION, PATRIZIO VINCIARELLI, JAMES F. SCHMIDT, and PHILIP D. DAVIES,<br><br>Defendants. | **Case No:**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nathalie Valiquette ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to her own acts, and upon facts obtained through an investigation conducted by her counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Vicor Corporation ("Vicor" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Vicor's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

1

**NATURE OF THE ACTION**

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Vicor's common stock between April 26, 2023 and February 22, 2024, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Vicor is a global power technology company designs, develops, manufactures, and markets modular power components and power systems for converting electrical power in the United States, Europe, and the Asia Pacific. It also designs, sells, and service custom power systems solutions. The Company serves independent manufacturers of electronic devices, original equipment manufacturers, and their contract manufacturers in the aerospace and aviation, defense electronics, satellites, factory automation, instrumentation, test equipment, transportation, telecommunications and networking infrastructure and vehicles, and transportation markets.

3.      Defendants provided investors with material information concerning Vicor's second quarter 2023 earnings alongside a series of promotional statements about the company's forthcoming AI platform. These AI-related statements led investors to believe that Vicor had secured a significant deal with Nvidia for its H100 product. During an investor conference call the same day, analysts asked Defendant Vinciarelli if the new AI platform was for a new customer and how significant was the volume of the incoming business. Defendant Vinciarelli assured the market that it was "new generation for an existing customer" and that it was a "significant customer."

4.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements that Vicor

2

Corporation's prospects for a big sales contract with Nvidia. This caused Plaintiff and other shareholders to purchase Vicor's securities at artificially inflated prices.

5.      The truth began to emerge just a few months later on October 24, 2023, when Vicor issued a press release announcing its third quarter 2023 earnings and guidance for the remainder of the year. In pertinent part, Defendant Vinciarelli noted that although Q3 bookings remained weak the Company was in good position with the progress made with its intellectual property and ChiP capacity and potential for diversification and expansion into the AI power system market. However, while discussing earnings, Vicor appeared reluctant to discuss its AI platforms, which analysts took as a sign of "shrink[ing]" opportunity in the space.

6.      In response to this news, Vicor's stock price fell by $14.14/share. However, Defendants continued to materially misrepresent that Vicor had secured a significant deal for its H100 product thereby causing Vicor's stock price to increase under false pretenses over the next few months, namely that the deal had been secured with Nvidia.

7.      On February 22, 2024, Vicor issued a press release announcing its end of year earnings, which also missed analyst expectations and signaled a sharp reversal in new contracts and sales. As a result, the price of Vicor stock declined from $46.84 per share on February 22, 2024, to $35.67 per share on February 23, 2024.

8.      Investors have sustained significant damages as a result of Defendants' fraudulent statements. Plaintiff seeks to recover those damages by way of this lawsuit.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action on behalf of himself and other similarly situated investors to recover losses sustained in connection with Defendants' fraud.

10.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

12.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Vicor is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

14.    Plaintiff purchased Vicor common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing her transaction(s) in Vicor is attached hereto.

15.    Vicor is a Massachusetts corporation with its principal executive offices located at 25 Frontage Road, Andover, MA 01810 . During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "VICR."

16.    Defendant Patrizio Vinciarelli ("Vinciarelli") was, at all relevant times, the Founder, Chairman, Chief Executive Officer and President of Vicor.

17.     Defendant James F. Schmidt ("Schmidt") was, at all relevant times, the Vice President, Chief Financial Officer, Treasurer, Secretary and Director of Vicor.

18.     Defendant Philp D. Davies ("Davies") was, at all relevant times, the Vice President of Gloval Sales & Marketing and Director of Vicor.

19.     Defendants Vinciarelli, Schmidt and Davies are sometimes referred to herein as the "Individual Defendants."

20.     Vicor together with the Individual Defendants are referred to herein as the "Defendants."

21.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vicor's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

22.     Vicor is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful act complained of herein were carried out within the scope of their employment with authorization.

23.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Vicor under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

**A.    Company Background**

24.     Vicor is a global power technology company designs, develops, manufactures, and markets modular power components and power systems for converting electrical power in the United States, Europe, and the Asia Pacific. It also design, sells, and service custom power systems solutions. The company serves independent manufacturers of electronic devices, original equipment manufacturers, and their contract manufacturers in the aerospace and aviation, defense electronics, satellites, factory automation, instrumentation, test equipment, transportation, telecommunications and networking infrastructure and vehicles, and transportation markets.

**B.    Materially False and Misleading Statements Issued During the Class Period**

*April 25, 2023*

25.     On April 25, 2023, Vicor issued a press release announcing its first quarter of 2023 financial results. The press release stated in pertinent part:

> Dr. Patrizio Vinciarelli, Chief Executive Officer, stated, ***"Bookings may remain weak until AI OEMs capture the benefits of advanced Power Distribution Networks ("PDNs") with Lateral-Vertical PDNs using existing 4G FPA modules."***

> "Progress with automotive applications using 4G modular solutions at up to 150kW is paving the way for production ramps starting in 2025 which will complement our growth opportunity with AI in data centers."

> ***"With the imminent completion of our first Converter-housed-in-Package ("ChiP") foundry, 5G FPA enabling scalable, high efficiency Vertical PDNs on the critical path of advanced AI systems, and automotive electrification driving broad acceptance of ChiPs, I have high expectations about Vicor's future growth and profitability."***

6

(Emphasis added.)

26.    On the same day, Defendants held an earnings call that included Defendants Vinciarelli, Schmidt and Davies on behalf of Vicor. During the call, the Individual Defendants provided analysts with detailed information concerning the Company's ramping up of lateral and lateral/vertical PDN opportunities, as well as potential for its AI platforms by the end of 2023 or early 2024.

27.    During the earnings call, Defendant Davies stated in pertinent part:

In Q1, the high performance computing market saw the introduction of artificial intelligence chatbots, using large language models, which have significantly stimulated the market for AI systems at hyperscalers and social media companies globally. These new chatbot capabilities open up completely new areas of AI to the masses and have a much higher customer satisfaction than traditional search engines. ***Our factorized power solutions are being used to power the rollout of this exciting new technology and as higher performing processes are introduced, our lateral vertical solutions will provide the higher current density and lower PDN losses that these next-generation AI processes demand, with increasing current levels and lower operating voltages.***

As I commented in our last call, new 5 nanometer processors being introduced to the market using lateral power conversion solutions are hindered with high PDN loss, which limits performance from otherwise achievable levels. ***Lateral vertical factorized power enables the full potential of AI processes by reducing processor and PDN losses.***

***On the product development front of Gen 5 technology continues to make excellent progress, and is on schedule for introduction to major customers this year. These next-generation point-of-load solutions enable scalable, cost effective VPD or vertical power delivery, which will be a game changer for the industry and enable next-generation processes that would otherwise be handicapped by the power conversion and delivery challenges of multiphase technology.***

(Emphasis added.)

28.    During the same call, Defendants were questioned about Vicor's expanding opportunities using its multiphase technology and major customer engagements expectations for the upcoming year.

<Q: Jonathan E. Tanwanteng -CJS Securities – Analyst> My first one is, what are your biggest customers telling you about competitiveness of your product?

\*       \*       \*

<A: Philip D. Davies> Okay. So Jon, so I think it's clear that the multiphase technology is advanced with current density, but it's still not at the levels that we're at in terms of the density of the product and the ability of the product, which in lateral vertical is very important is to be very thin. So you need to have a very, very thin package that you can place on the back of the Board in any sort of GPU, ASIC, CPU type application. So that's number one.

I think that with Gen5 technology, which is where we're focusing the majority of our product development here, now that's a complete game changer in terms of the 3x improvement in current density that Patrizio has spoken about that changes things dramatically with regards to power delivery for high current GPUs and also the optical networking backbone processes. So that's what we're looking at currently. But lateral vertical is certainly superior to a multiphase lateral approach.

<A: Patrizio Vinciarelli> Let me add. It's been nearly 40 years when Vicor introduced its first products. We took converters which at the time were about 1 watt per cubic inch to 10 watts, 15 watts per cubic inch at the much higher operating frequency. And our lead in terms of power density, current density, key figures are met in demanding applications. As persisted for decades, it's not about [indiscernible], as Phil just suggested, its about to take a major leap forward.

\*       \*       \*

<Q: John Dillon -Investor> Are you still planning on doing 4G with lateral vertical and would that be this year or is that also -- does that also step out next year? And can you give us a little color on the customers that are looking at your 4G technology for lateral vertical?

<A: Patrizio Vinciarelli> So existing designing activity for lateral vertical is as of now still based on 4G modules, existing 4G modules. Before too long any incremental activity and expanding level of activity would be enabled by 5G building blocks, but as of now it's still with existing 5G -- 4G module.

\*       \*       \*

<Q: John Dillon -Investor> Am I correct in my views that you are better positioned now than you had been? And if so, what makes it different from the past, where we've had these successes and also setbacks?

<A: Patrizio Vinciarelli> Well, that's a very good question. I can tell you personally, I feel that way. I think in terms of articulating why I feel that way. I think, I suggested in the press release, it has do with a combination of factors. First of all, we are very close to the first global foundry for chips, there is nothing that comes close or can come close. It is enabling that it provides scalability in terms of volume

8

cost, very low cost structure from very low power levels to applications ranging up to literally 100s of kilowatts in automotive applications.

So whether it's a fast charger for an electric vehicle in the 100s of kilowatts or a current multiplier in the 1,000 amp or several 1,000s amp range on a multiplicity of rails for the future GPU or XPU. Our ChiP foundry is converted housing package foundry, gives us an empower unique capability to provide not just the highest power density or current density solution, the case maybe in automotive systems or AI, data centers type applications that enables us to do that with the lowest cost.

*      *      *

<A: Philip D. Davies> …I think that from my tenure here, the 12, 13 years, we've never had a quality set of customers that we're engaged with like we have now. So that's really critical right to who are you working with and what does the future hold for those customers in their markets, are they leaders? And they can't just be in high performance compute with a couple of big companies, hyperscalers or GPU guys. It's got to be right across the 4 business units that we are now developing long range revenue plans for and are engaged with great customers right across the globe.

29.    The above statements in Paragraphs 25 to 28 were materially false and/or misleading. Specifically, Defendants created the false impression that: (i) their differentiated technology for high power applications would ramp up a customer base for their advanced products in AI; (ii) they would have increased opportunities from its lateral and lateral/vertical PDN solutions; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### *July 25, 2023*

30.    On July 25, 2023, Vicor issued a press release announcing second quarter 2023 results. The press release stated, in pertinent part, that:

Chief Executive Officer Dr. Patrizio Vinciarelli stated: "**Q2 bookings remained weak, ahead of production release of an AI platform with a Lateral Power Distribution Network ("PDN") using a 4G ChiP-set, now expected to ramp in Q4. The same 4G ChiP-set will support a more adept Lateral-Vertical PDN, enabling a reduction of nearly 100W in total power consumption at heavy workloads and superior processor performance.**"

"Further performance improvements will be enabled by 5G MCMs, raising current density by nearly 3X. High current density is necessary for 2nd Gen VPD to circumvent the stacking complexity and cost of 1st Gen VPD modules."

***"With the imminent completion of our first foundry, with 5G FPA enabling scalable, high efficiency Vertical Power Delivery ("VPD"), and with automotive electrification driving broad acceptance of ChiPs, I am confident about Vicor's future growth and profitability."***

(Emphasis added.)

31.     Although some information as to the Company's true condition was revealed, Defendants continued to mislead investors. During an earnings call the same day, analysts asked Defendant Vinciarelli if the new AI platform was for a new customer and how significant was the volume of the incoming business. Defendant Vinciarelli assured investors that it was "new generation for an existing customer" and that it was a "significant customer."

32.     Defendant Davies emphasized that the Company's next-generation AI platform in lateral-vertical PDN "will provide nearly 10 higher power system efficiency and superior processor performance." Defendant Davies further stated "[w]ith a 300% advance in current density, Vicor's fifth generation technology enables a more mature and scalable second-generation VPD, which will soon be key to high-performance AI accelerators."

33.     Analysts understood these comments to mean that Vicor had secured a significant deal from Nvidia, which implied significant revenue for Vicor in the near-term. For example, on July 26, 2023, Craig-Hallum reported:

> *Upgrading To BUY As VICR Appears To Win Back NVDA. Raising Price Target To $80.*
>
> We are upgrading VICR to a Buy based on our conclusion that VICR has returned to the NVDA supply chain. This confirms that VICR's technology has not been equaled by competition, and that it was to a good degree a supply chain decision . . . . The big news was VICR indicated it has won a design in an AI platform to ramp in 4Q. **On the conf call, VICR indicated it supported a current GPU customer**

**with 1000A envelope – this is almost certainly NVDA H100**. VICR said performance and supply chain appear to be the reasons for getting back, and expects to be allocated a certain, but unknown share, of this platform. . . . .

(Emphasis added)

34.     The aforementioned statements made in the press release and earnings call on July 25, 2023 were false and/or materially misleading. Defendants AI-related statements led investors to believe that Vicor had secured a significant deal with Nvidia for its H100 product. In response to these announcements, Vicor's stock price jumped 50% in the span of just a day from $59.41/share to $95.14/share.

<u>*October 24, 2023*</u>

35.     A few months later on October 24, 2023, Vicor issued a press release announcing third quarter 2023 earnings and guidance for the remainder of the year. The press release stated in pertinent part:

> Chief Executive Officer Dr. Patrizio Vinciarelli stated: ***"While Q3 bookings remained weak, I am pleased with progress made with our ChiP foundry and our 5G product line."***
>
> "Competitive AI platforms will soon require higher current density and Vertical Power Delivery ("VPD"). ***Our investment in the world's first ChiP foundry and 5G power system capability anticipated the evolving requirements of AI power systems, as reflected in recent customer engagements. With its intellectual property and ChiP capacity, Vicor is uniquely positioned to diversify and expand its share of the AI power system market."***

(Emphasis added)

36.     On an earnings call the same day, Defendant Schmidt discussed Vicor's guidance for the fourth quarter 2023 stating that "[w]ith the reduction in backlog, including overdue backlog, we are more dependent on turns orders, and that results in less visibility to our near-term

outlook. While that is the case, our current expectation is that revenue, gross margin, and operating expenses will be approximately flat sequentially.

37.    Notably, while discussing earnings, Defendants appeared reluctant to discuss the Company's AI platforms, which analysts took as a sign of "shrink[ing]" opportunity in the space. Defendant Davies merely stated "[i]n view of the current density and performance gaps enabled by our 5G solutions and evolving AI-powered system demands, I am confident that within a few years, we will gain a dominant share of the AI power system market."

38.    During the question-and-answer segment, Defendant Davies was asked about the new AI platform that Vicor was touting last quarter, specifically whether it was same 1,000-watt required by NVIDIA:

> <Q: Nathaniel Quinn Bolton – Needham & Company- Analyst> Last quarter, you guys seemed pretty excited about this new AI platform that you expected to ramp in the fourth quarter of '23 and throughout 2024. Can you just give us any updates on that program? How you're feeling about it? Is it still on track? Have you started to see more bookings associated for that? And a related question, there are now 2 platforms on the market, one by NVIDIA, one by AMD that I think both are rated at 1,000-watt TDP. It seems like 1,000 watt is kind of the key power level where you guys bring some real advantages, especially with lateral vertical. Can you confirm whether this AI platform is indeed a 1,000-watt here?

> <A: Philip D. Davies>  So the first part of your question, I think, was what we talked about on the last call. And in my prepared remarks, I basically said that the first area of focus was to ramp in Q4, our 48-volt bus converters and factorized power solutions. So I hope that answers that question pretty clearly. The second, in terms of power, we're seeing 1,000 watt GPUs and network processes and all sorts of ASICs and mixes of CPU, GPU combos out there. As Patrizio talked about, we have the technology to address those that offers, as I mentioned in my prepared remarks as well, significant power savings with lateral vertical solutions of the scale of megawatts in data centers, which is really critical to any data center company. Analyst Craig-Hallum following the Company noted that management's cautious tones relating to the "new AI-based design win (that everyone assumed was NVDA)" makes Vicor "look like it doesn't know what's going on (or worse)."

39.     The aforementioned statements made in the press release and earnings call on October 24, 2023 were false and/or materially misleading. Defendants' announcement of further weaker bookings for the third quarter and reluctance to discuss its AI platforms, specifically the potential deal with Nvidia caused Vicor's stock price to fall by $14.14/share from $53.19/share to $39.05/share.

40.     At the same time, Defendants continued to mislead investors when discussing Vicor's advanced Gen 5 technology and ramping up of its customer base. In pertinent part, during the July 25, 2023 earnings call, Defendant Davis stated:

> *And with our Gen 5 technology coming along, I mean the level of engagement now is very, very high. As I said, we're having substantial conversations now with customers that will diversify us away from the 2 big guys that we've been doing business with for the next -- for the last few years.*
>
> *So as I said, I'm very confident in the future and where we stand. And it's a bit of a complex landscape, as I said, because you've got new programs starting up, old programs ending. There's a bunch of other stuff going on out there with technology and product introduction. So as I say, we're confident in our position in the market.*

(Emphasis added.)

41.     The above statements were false and/or materially misleading because during the earnings call no reference was made about shipping any of Vicor's 4G chipset to leading accelerator customers in the fourth quarter and Vicor's backlog continued to remain weak and decreasing for the third quarter.

## C.     The Truth Emerges

### *February 22, 2024*

42.     On February 22, 2024, Vicor issued a press release announcing financial results for the fourth quarter and year ended 2023. The press release stated in pertinent part:

Revenues for the fourth quarter ended December 31, 2023 totaled $92.7 million, a 12.2% decrease from $105.5 million for the corresponding period a year ago, and a 14.1% sequential decrease from $107.8 million in the third quarter of 2023.

Gross margin decreased to $47.3 million for the fourth quarter of 2023, compared to $49.1 million for the corresponding period a year ago, and decreased sequentially from $55.9 million for the third quarter of 2023. Gross margin, as a percentage of revenue, increased to 51.1% for the fourth quarter of 2023, compared to 46.6% for the corresponding period a year ago, but decreased from 51.8% for the third quarter of 2023.

*       *       *

Backlog for the fourth quarter ended December 31, 2023 totaled $160.8 million, a 47.2% decrease from $304.4 million for the corresponding period a year ago, and 8.0% sequential decrease from $174.7 million at the end of the third quarter of 2023.

*       *       *

**Chief Executive Officer Dr. Patrizio Vinciarelli stated: "As our products and applications pipeline create demand to fill our vertically integrated foundry, we have turned down deals that would have been inconsistent with our long term strategy."**

**"Competitive AI platforms require higher current density and Vertical Power Delivery ("VPD"). PoL systems with a large multiplicity of phases have inadequate current density. Our 5G product line and ChiP foundry put us well ahead of AI power system requirements, providing superior performance and scalable capacity to expand the market opportunity."**

(Emphasis added.)

43.     Vicor missed analyst expectations for the fourth quarter 2023. On an earnings call the same day, Defendants were questioned as to potential customer interest in its 4G products.

<Q: Alan Hicks – Investor> Then going forward, you're capable of building the 4G products lateral and vertical. And what's the interest in 4G?

<A: Philip D. Davies> Absolutely. So that will play out as we move through the year. But the real focus, and I think that's where Patrizio is going is really establishing the 5G technology because it's 3x the power density of 4G, which is a major value proposition to vertical power delivery and other lower current lateral applications too. So it opens up new markets for us, bigger markets. So I think it's an exciting time.

<A: Patrizio Vinciarelli> Yes. And in fact, we -- I'm not thinking about 4G. I'm thinking and the excitement theme is very much focused on making sure that we

bring 5G to completion and get demo system poured out to customers, tools and begin that scale up.

44.     The aforementioned press release and statements made by the Individual Defendants were misleading and in direct contrast to their above statements, including those made during their October 24, 2023 earnings call. On that call, Defendant Vinciarelli stated that may be "substantial increases" and a "range of scenarios that include a pretty steep climb" in bookings for the next few quarters. Yet, Vicor's financial results for the fourth quarter missed analyst expectations and signaled a sharp reversal in the Company's new contracts and sales.

45.     An analyst at Craig-Hallum lowered its price target on Vicor's lack of visibility reporting that "Vicor's large 4Q miss, complete lack of forward guidance that implies a much lower outlook for some time…"

46.     As a result, investors and analysts reacted immediately to Vicor's revelation. The price of Vicor's common stock declined dramatically. From a closing market price of $46.84 per share on February 22, 2024, to $35.87 per share on February 23, 2024.

**D.     Loss Causation and Economic Loss**

47.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Vicor's common stock, or maintained levels of artificial inflation in Vicor's common stock price, and operated as a fraud or deceit on Class Period purchasers of Vicor's common stock by materially misleading the investing public. Later, when Vicor and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Vicor's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Vicor's common stock during

the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

48.     Vicor's stock price fell in response to the corrective events on October 24, 2023 and February 22, 2024, as alleged *supra*. On February 22, 2024 Defendants disclosed information that was directly related to their prior misrepresentations that Vicor had secured a significant deal with Nvidia for its H100 product.

**E.     Presumption of Reliance; Fraud-On-The-Market**

49.     At all relevant times, the market for Vicor's common stock was an efficient market for the following reasons, among others:

(a)     Vicor's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     Vicor communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Vicor was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Vicor was reflected in and incorporated into the Company's stock price during the Class Period.

50.     As a result of the foregoing, the market for Vicor's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Vicor's stock price. Under these circumstances, all purchasers of Vicor's common stock during the Class Period suffered similar injury through their purchase of Vicor's common stock at artificially inflated prices, and a presumption of reliance applies.

51.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**F.     No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with a series of promotional statements about the company's forthcoming AI platform. These AI-related statements led investors to believe that Vicor had secured a significant deal with Nvidia for its H100 product.

53.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements.

54.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Vicor who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Vicor's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vicor's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Vicor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of February 15, 2024, there were 32 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

      (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Vicor;

(c)     whether the Individual Defendants caused Vicor to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Vicor's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder*

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vicor common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Vicor's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Vicor's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

65. By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants

were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Vicor's internal affairs.

67.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Vicor's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Vicor's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Vicor's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

68.     During the Class Period, Vicor's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Vicor's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Vicor's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Vicor's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Against the Individual Defendants
### for Violations of Section 20(a) of the Exchange Act

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Vicor's misstatements.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Vicor which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Vicor disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Vicor to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Vicor's common stock.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Vicor to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants and/or Vicor are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 25, 2024                      Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (BBO# 657485)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel. (203) 992-4523
Fax: (212) 363-7500
E-mail: shopkins@zlk.com

-and-

Adam M. Apton (*pro hac vice to be submitted*)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Nathalie Valiquette*